HANA RANCH, INC., Plaintiff / Counter-Claimant-Defendant, Appellant, *v.* JOSEPH H. KUMAKAHI, ETHEL PIILANI, ROBERT GENTRY, PRISCILLA GENTRY, LEE G. WIL-LARD, WILHELMINA C. KAUI, SILA A. K. KAEO SOLOMON, DAISY L. KAAI, SAMUEL K. KAEO, JAMES H. DUMM, YOSHIO OKADA, HARRY T. HASEGAWA, ROSA-LINA A. HASEGAWA, ABRAHAM P. KUMUKAHI, MARY KEAHI, GWENDOLYN M. MAKEPA, CATHERINE HELE-KAHI, JOHN KU, ESLELTA K. ROSE, GEORGE J. WILLARD, JOHN R. CABRAL, COUNTY OF MAUI, JOHN DOE ONE THRU ONE HUNDRED, X CORPORATION, AB PARTNER-SHIP, and TO ALL WHOM IT MAY CONCERN, Defendants, and WAYNE HINANO BRUMAGHIM, MARGARET K. I. B. BARTHOLOMEW, EVERETT M. BRUMAGHIM, LESLIE C. MEDEIROS, GEORGE EZAKI, BETTY S. EZAKI, JAMES F. FLEMING, ELIZABETH FLEMING, VIRGINIA S. YOULIN, HATTIE P. DeREGO, Defendants/Cross-Defendants, Appellees, and MURRAY ENGLISH, Defendant, Cross-Appellant, and ALAN C. KAY, Defendant/Counter-Claimant, Cross-Plaintiff

NO. 10535

(CIVIL NO. 3202(1))

JULY 1, 1986

BURNS, C.J., HEEN AND TANAKA, JJ.

OPINION OF THE COURT BY HEEN, J.

In this quiet title/partition action, Plaintiff-Appellant Hana Ranch, Inc. (Hana Ranch) appeals from the judgment below in favor of Defendants-Appellees Wayne Hinano Brumaghim (Wayne), Margaret K. I. B. Bartholomew (Bartholomew), Everett M. Brumaghim (Everett), Leslie Medeiros (Medeiros), George Ezaki, Betty S. Ezaki, James F. Fleming, Elizabeth Fleming, Virginia S. Youlin, and Hattie DeRego (DeRego) (Defendants-Appellees will be collectively referred to in this opinion as Defendants). Defendant-Appellant[1] Murray English (English) appeals from the same judgment. We dismiss Hana Ranch's appeal for lack of appellate standing and affirm the judgment against English's attack.

## FACTS

The basic dispute here is over title to a fractional share of a one-tenth undivided interest (Nakuina interest) in land located in Hamoa, Hana, Maui, and originally granted to Keohokalole under Mahele Award 3, Royal Patents 4473 and 6923.[2] Keohokalole conveyed all the land in the grant to Charles R. Bishop, trustee, who subsequently conveyed one-tenth undivided interests in the whole to ten individuals, one of whom was Nakuina. The Nakuina interest was conveyed to Kalawa by Kauhane, who claimed to be Nakuina's father and heir. All the parties to both appeals in this case claim title to the Nakuina interest through Kalawa: Hana Ranch through a deed from Kalawa to its predecessor in

---

[1]Although the Record on Appeal names Murray English (English) as Appellee, Cross-Appellant, the judgment did not award English any part of the land in dispute, and Hana Ranch is not appealing from any of the proceedings below relating to English. Answering briefs in the Hana Ranch appeal were filed by Bartholomew, Medeiros, DeRego, and English. Bartholomew and Medeiros filed answering briefs in response to English's opening brief in his appeal.

[2]The complaint described the area of the original grant to be 178.197 acres. However, certain areas were excluded from this partition action as having previously been set aside for certain uses. The net area involved in this action to quiet title and partition is 169.073 acres.

title dated October 7, 1886, and Defendants and English as heirs of Kalawa.[3]

On December 1, 1976, Hana Ranch filed its complaint in this case to quiet title and partition the Hamoa land. Malcolm Keawe Brumaghim (Malcolm), Myron Kamohoalii Brumaghim (Myron) and Wayne[4] were allowed to intervene and answer the complaint. Bartholomew answered the complaint, although she was not named as a defendant, and the record does not reveal a motion by her to intervene. English also was allowed to intervene.

In its complaint, Hana Ranch alleged that it was the owner of an undivided 175321/252000ths interest (approximately 69.5718%) in the property under a March 2, 1975 decree of the land court in Hana Ranch's Land Court Application No. 1602 (hereafter land court decree), and that it owned an additional 16402/252000ths (approximately 6.51%)[5] under deeds not registered with the land court. In the course of the proceedings in the instant case, Hana Ranch was able to settle its differences over paper title to the unregistered interests with all parties below except Defendants.

In accordance with the trial court's pre-trial order, the first phase of the trial, dealing with the claimants' proof of title began on June 6, 1983.[6] On the first day of trial, Defendants orally stipulated that Hana

---

[3]Four acres of the Nakuina interest were conveyed by Kalawa to Kauhane (whether that was the same Kauhane who conveyed to Kalawa we do not know) and subsequently acquired by defendant below, John B. Cabral (Cabral). It was customary for conveyances of interests in hui lands to recite the interest in terms of acreage rather than percentage. *Yoshimoto v. Lee*, 2 Haw. App. 477, 634 P.2d 130 (1981). The parties to this appeal do not dispute Cabral's ownership of the four acres. In the opinion, reference to the Nakuina interest will be to the remainder of that interest after Cabral's four acres are deducted.

[4]The judgment does not name Malcolm or Myron as owners of any interest. Everett M. Brumaghim (Everett) was named as having an interest, although he was not named as a defendant and did not intervene. The record indicates that, Wayne and Everett were entitled to a share of the Nakuina interest as sons of a deceased Everett Brumaghim and that Malcolm and Myron were not legal heirs of the deceased Everett Brumaghim.

[5]Hereafter, the undivided interests of the parties will be referred to as percentages of the 169.073 acres.

[6]The proceeding was trifurcated into proof of title, proof of adverse possession, and partition phases.

Ranch was the owner of the 75.5288% interest it claimed in the property.[7] On November 17, 1983, all of the defendants remaining below filed a written stipulation agreeing to the allocation of undivided interests among all the parties, except English, of 97.5804386% of the 169.073 acres. The written stipulation allocated the following percentages of the 169.073 acres to Defendants

| | |
|---|---|
| Wayne Hinano Brumaghim | 1.2723600 |
| Margaret K. I. B. Bartholomew | 1.2723600 |
| Everett M. Brumaghim | 1.2723600 |
| Leslie Medeiros | 0.8142600 |
| George Ezaki | 1.1053300 |
| Betty S. Ezaki | |
| James F. Fleming | 0.5526600 |
| Elizabeth Fleming | |
| Virginia S. Youlin | 0.2394800 |
| Hattie DeRego | 1.1053300, |

and allocated 75.5288% to Hana Ranch. Of the remaining 16.83712% interests, 14.4175% were allocated to the other defendants below and 2.4195614% were reserved to cover expenses and fees, and for allotment to those parties who might prove themselves to be entitled to more by adverse possession. The written stipulation also provided that the undivided interests of Wayne, Bartholomew, and Everett would be reduced proportionately if the trial court found that English was entitled to an interest in the land. In an order dated September 26, 1983,[8] the trial court held that English was not entitled to a share in the Nakuina interest. On November 23, 1983, Hana Ranch filed a motion to vacate the written stipulation on the ground that it violated the trial court's duty to protect unknown owners under Hawaii Revised Statutes (HRS)

---

[7] The stipulated figure consists of the 69.5718% interest registered in Land Court Application No. 1602 and unregistered interests totalling 5.9567%. The figure for the unregistered interests does not agree with the complaint because in its amended pre-trial statement filed on May 26, 1983, Hana Ranch revised its unregistered interest claim to 5.957%, rather than 6.51%. We assume that the difference between Defendants' stipulated figure for the unregistered interests and Hana Ranch's pre-trial statement figure is caused by rounding-off by Hana Ranch in the pre-trial statement.

[8] The trial court's ruling as to English's claim predated the filing of the stipulation. At oral argument it was explained that the delay in filing the stipulation was caused by the necessity to circulate it among all the defendants below for signature.

§ 668-9 (1976),[9] and it was not signed by Hana Ranch. The motion was denied on February 8, 1984. On January 12, 1984, however, Hana Ranch filed its own "Stipulation for Entry of Judgment" signed by its attorney only, in which it agreed to entry of a judgment awarding to all the parties except Defendants title to the undivided interests alloted them by Defendants' stipulation.

In its attempt to defeat Defendants' claims to the Nakuina interest, Hana Ranch filed a motion on August 11, 1983, for permission to present testimony to show that its paper title to the Nakuina interest was included in the 69.5718% undivided interest registered in Hana Ranch by the land court decree and, consequently, title to that interest could not be vested in Defendants. The motion was granted and the trial court heard testimony from John Hanchett, Hana Ranch president, regarding registration of the Nakuina interest. The transcript of Hanchett's testimony is not in the record on appeal; however, the parties agree that the tenor of his testimony was that Hana Ranch had proven its title to the Nakuina interest before the land court and, under that court's decree, Hana Ranch was the owner of the Nakuina interest.

On October 31, 1984, the trial court entered its Findings of Fact and Conclusions of Law (First FOF and COL) holding in substance that Defendants did not have paper title to the Nakuina interest because Kalawa had conveyed the interest before his death. On November 13, 1984, Bartholomew and Medeiros filed a motion for reconsideration of

---

[9]Hawaii Revised Statutes (HRS) § 668-9 (1976) provides:

Unknown and absent owners. The court shall in all cases provide for the protection of the interests of all unknown owners and other owners served under sections 634-23 or 634-24 who do not appear in the action, in the same manner as far as may be as if they were known and had appeared in the action. In every case their rights must appear to the satisfaction of the court, but the court may consider them together in the action without considering them separately. The ascertained share of any such owner in any proceeds of sale shall be paid into court for his benefit, subject to disposition according to law. If there are any unknown owners of any share or interest, or any other owners served under sections 634-23 or 634-24 who do not appear in the action, the court shall have power in making the general partition to allot and set apart for such share such a portion or portions of the property as the owners thereof would respectively be entitled to receive in the partition were they known and had appeared in the action. The portion so set apart for such share shall thereafter alone be the subject of ownership by such owner if he has been served. The remaining portions of the property shall be regarded as belonging to the other parties interested therein.

the First FOF and COL. The motion was joined in by DeRego, Wayne, Myron and Malcolm and was granted by the trial court on December 7, 1984. On December 31, 1984, new Findings of Fact and Conclusions of Law (Second FOF and COL) were filed. They read as follows:

## FINDINGS OF FACT

1. Over Defendant's objections, John Hanchett, the President of Plaintiff, was permitted to testify as an expert witness that Kalawa's undivided interest in the land had been registered in Plaintiff in Land Court Application 1602 on the theory that Plaintiff had proved *good paper title* to Kalawa's undivided interest in Land Court Application 1602.

2. The record in Land Court Application 1602, however, shows:

a. In its Land Court application, Plaintiff alleged that it was the owner in fee simple of an undivided 175321/252000ths (69.5718%) interest in the land and that the *heirs of Kalawa,* among others, were *"co-tenants of the remaining fractional undivided interest in said land.* (See paragraph III, page 4 of the Application-Langa Exhibit 11. Emphasis added.)

b. The Examiner of the title in Land Court Application 1602 found that the "Applicant has *not good paper title* to any of the lands" (See Report of Examiner, page 14-Langa Exhibit 12).

c. The Land Court Judge found that the Plaintiff had been under claim of title with color of title to an undivided 175321/252000ths (69.5718%) interest in fee simple in *adverse possession* of the land (See Decision, page 6-Plaintiff's Exhibit 91).

d. Even if Plaintiff could now prove that it had acquired good paper title to Kalawa's undivided interest in the land prior to the Land Court Application, the Land Court Judge *did not find* that Plaintiff had good paper title to any of the land described in the Application.

## CONCLUSIONS OF LAW

A. Plaintiff sought registration of title to an undivided 175321/252000ths (69.5718%) interest in the land and acknowledged in its application that the heirs of Kalawa, among others, were co-tenants of the remaining fractional undivided interest in the land. The Land

Court Judge could not and therefore did not find that the Plaintiff had acquired title to the fractional undivided interest in the land owned by the heirs of Kalawa.

B. Title to Kalawa's undivided interest in the land was not registered in Plaintiff in Land Court Application 1602.

C. Upon the death of Kalawa, his undivided interest in the land desribed [sic] in the Complaint descended to his only children and sole heirs, Ane and Lilinoe, the predecessors in title of those Defendants in this action who have traced their title from Ane and Lilinoe.

(Emphasis in original.)

Judgment was entered on January 24, 1985, awarding Defendants title to the undivided interests set forth in the November 17, 1983 stipulation. After the trial court granted Hana Ranch's "Motion To Allow Interlocutory Appeal And To Make Judgment Final And Appealable Under Rule 54(b) HRCP," both Hana Ranch and English appealed. We will first discuss Hana Ranch's appeal.

## HANA RANCH APPEAL

### 1.

Defendants argue that Hana Ranch does not have standing to appeal because the judgment below awarded to Hana Ranch all the relief it sought in its complaint and, consequently, Hana Ranch was not aggrieved by the judgment. We agree.

Three requirements must be met in order for a person to have standing to appeal: (1) generally, the person must have been a party to the lower court proceeding; (2) the person must have had standing in the lower court to oppose the judgment appealed from; and (3) the person must be aggrieved by the judgment appealed from. *FFG, Inc. v. Jones,* 6 Haw. App. ___, ___, 708 P.2d 836, 845 (1985).

Although we have held that in quiet title cases the courts should not be "over nice in the application of modern, technical, legal concepts in determining standing," *Hana Ranch, Inc. v. Kanakaole,* 1 Haw. App. 573, 576, 623 P.2d 885, 887 (1981); *see also Hustace v. Kapuni,* 6 Haw. App. ___, 718 P.2d 1109 (1986) (standing to appeal is not dependent upon the magnitude of one's claim), in both of those cases the party whose standing was questioned had an interest in the subject matter and result of the judgment itself. Hana Ranch, however, is not affected nor

aggrieved by the judgment appealed from and, consequently, has no standing to appeal.

Initially, we note that Hana Ranch's claim to the paper title to the Nakuina interest is not a basis for any part of the 5.957% unregistered undivided interests it alleges it owns. However, Hana Ranch attempted below to show that the Nakuina interest was included in the 69.5718% interest it had registered in the land court. Therefore, the question is whether the land court decree vested title to the Nakuina interest in Hana Ranch.

The thrust of the trial court's Second FOF and COL is that: (1) in its land court application Hana Ranch acknowledged that the heirs of Kalawa were co-tenants of the remaining fractional undivided interests that were not included in the 69.571% undivided interest that Hana Ranch sought to register; (2) the title registered in Hana Ranch by the land court decree was based on Hana Ranch's adverse possession claim and not its paper title; (3) the land court had ruled in its decree that Hana Ranch did not have paper title to the Nakuina interest. Implicitly, the trial court ruled that the land court proceedings and decree rendered the issue of Hana Ranch's paper title to the Nakuina interest *res judicata.*

Interpretation or construction of a "judgment, decree or order 'presents a question of law for the courts.'"[10] *Wohlschlegel v. Uhlmann-Kihei, Inc.,* 4 Haw. App. 123, 130, 662 P.2d 505, 511 (1983) (quoting *Cain v. Cain,* 59 Haw. 32, 39, 575 P.2d 468, 474 (1978)). "A trial court's interpretation or construction is not binding on an appellate court and is fully reviewable on appeal." *Id.* A judgment must be construed as a whole so as to give effect to the intent of the court, and the judgment may be read in the context of the entire record to determine that intent. *Id.* 4 Haw. App. at 130-131, 662 P.2d at 511. Our review of the land court documents, all of which were received in evidence by the trial court, convinces us that the trial court was correct.

In its land court application, Hana Ranch claimed title to the 69.571% undivided interest only, and although its chain of title indicated its succession to the Nakuina interest conveyed to its predecessor by Kalawa, Hana Ranch explicitly acknowledged that the "co-tenants of

---

[10]John Hanchett's testimony was irrelevant.

the remaining fractional undivided interest" included the heirs of Ka-lawa. The land court duly appointed an Examiner of Title (Examiner) pursuant to HRS § 501-32 (1976) to search the records and investigate all facts stated in the application and to report on Hana Ranch's application. The Examiner reported that Hana Ranch did not have good paper title to any of the interests it alleged it owned, and that it did not have good "colorable" paper title to the Nakuina interest. The Examiner defined "colorable" paper title as being such title as Hana Ranch would have "if the assertions and recitations of grantors and mortgagors as to their heirship were true." The Examiner noted that "[w]ithout any record showing of Nakuina's death or heirs, obviously the paper title falls."

HRS § 501-32, *supra,* provides that if the Examiner's report is adverse to the applicant, the applicant may either withdraw the application or elect to proceed. Hana Ranch elected to proceed and made no effort to amend its application pursuant to HRS § 501-26 (1976). In our view, Hana Ranch's application was an admission that it did not have good paper title to the Nakuina interest. *Moore v. Drennan,* 269 Or. 189, 523 P.2d 1250 (1974). When it elected to proceed without amending its application, it acceded to the Examiner's findings, and abandoned its claim to the Nakuina interest under the Kalawa deed to its predecessor.

The land court decree does not indicate the basis upon which it awarded Hana Ranch the 69.571% undivided interest it claimed in its application. However, examination of the land court's decision,[11] upon which the decree was based, provides an understanding of the decree. The decision was entered on December 20, 1974, and stated, *inter alia,*

Based upon the proceedings had before this court I find and con-clude that the applicant and its predecessors in title had been under claim of title with color of title to an undivided 175321/252000ths interest as claimed in its application, (although the applicant has proven color of title to an undivided interest in 80.35% of the whole) in fee simple, in adverse, open, notorious, continuous and uninter-rupted possession for more than twenty years prior to the filing of the application of the land described[.]

---

[11] HRS § 501-61 (1976) requires that the decision of the land court "be filed in writing." The decree may be entered "thereon" after the expiration of ten days. *Id.*

We construe the decision to mean, in the light of the Examiner's report, that Hana Ranch had not proved good paper title to any of the interests it claimed in the land court, but had proved title only by adverse possession. We construe color of title to mean a claim based on documents that did not indicate good paper title.

In a land court application to register title to land, the applicant has the burden of establishing his or her title. *In re State of Hawaii,* 50 Haw. 507, 444 P.2d 909 (1968). Under HRS § 501-71 (1976), the land court may issue a decree registering title only if it finds the applicant has title as stated in its application. If it so finds, "a decree of confirmation and registration as prayed for shall be entered." *Id.* The thrust of the land court decree is that Hana Ranch had not met its burden of establishing its paper title, including its claim to paper title to the Nakuina interest. That finding is *res judicata* as to Hana Ranch's claim here, and Hana Ranch is collaterally estopped from asserting that same paper title here.

In *Paahao v. Swinton,* 20 Haw. 355 (1911), it was held that the land court's decree was *res judicata* where the same parties, subject matter, and issue were properly before it and had been decided. *Paahao* is distinguished from the instant case because Defendants were not parties to Land Court Application No. 1602.[12] However, in *Silver v. Queen's Hospital,* 63 Haw. 430, 436, 629 P.2d 1116, 1121 (1981), the supreme court established three requirements necessary for application of the doctrine of *res judicata:* (1) the issue presented in the present action must be identical to the issue decided in the prior action; (2) there must have been a final judgment on the merits in the prior action; and (3) the party against whom the doctrine is asserted was a party or in privity with a party to the prior adjudication. Here, the issue is the same as that in the land court, i.e., Hana Ranch, through the land court decree, is attempt-

---

[12]The notice of the filing of Hana Ranch's Application No. 1602 did not name the heirs of Kalawa as having an interest in the property.

At oral argument we suggested that perhaps Defendants were also barred by *res judicata* or collateral estoppel from asserting their title. HRS § 501-46 (1976) provides that the description in the notice of the filing of an application "to all whom it may concern" is notice to "all the world" and the world is concluded by an order of default in the land court proceedings. Nevertheless, we do not believe Defendants are barred because the issue of their title to the Nakuina interest was not decided in the land court proceedings. The land court decree only decided that Hana Ranch did not have good paper title to the Nakuina interest. It did not decide who did have good paper title. *Silver v Queen's Hospital,* 63 Haw. 430, 629 P.2d 1116 (1981).

ing to assert its paper title to the Nakuina interest. As indicated above, the land court decree decided that issue against Hana Ranch on the merits. Finally, Hana Ranch, the party here against whom the doctrine is asserted, was the applicant before the land court. The *Silver* requirements have been met.

On the basis of the above discussion, Hana Ranch is precluded from asserting any ownership or title to the Nakuina interest as part of its registered 69.5718% interest and is not asserting ownership of it as an unregistered interest. Consequently, it's claim of ownership in this proceeding is not affected by the judgment appealed from and Hana Ranch has no standing to assert error by the trial court.

2.

Lest this opinion be construed as too narrowly drawn and overly technical in dealing with the issues raised by Hana Ranch in its appeal, we have examined Hana Ranch's arguments and, as discussed below, find them to be without merit.

(a)

Hana Ranch's first argument that the judgment cannot be sustained because it is not supported by the First FOF and COL is easily disposed of by holding that the Second FOF and COL implicitly but most emphatically vacated the First FOF and COL.

Similarly, Hana Ranch's attack on the judgment on the ground that there is no finding that Kalawa died possessed of the Nakuina interest awarded to Defendants is not persuasive.

Where an appellant alleges that the trial court failed to make adequate findings of fact, the appellate court will examine all the findings, as made, to determine whether they are (1) supported by evidence; and (2) sufficiently comprehensive and pertinent to the issues in the case to form a basis for the conclusions of law. *Palama v. Sheehan,* 50 Haw. 298, 440 P.2d 95 (1968); *Shannon v. Murphy,* 49 Haw. 661, 426 P.2d 816 (1967); *Ventura v. Grace,* 3 Haw. App. 371, 650 P.2d 620 (1982); *Scott v. Contractors License Board,* 2 Haw. App. 92, 626 P.2d 199 (1981). If those findings include sufficient subsidiary facts to disclose to the reviewing court the steps by which the lower court reached its ultimate conclusion on each factual issue,

then the findings are adequate. *See Tugaeff v. Tugaeff,* 42 Haw. 455 (1958).

*Nani Koolau Co. v. K & M Construction, Inc.,* 5 Haw. App. 137, 140, 681 P.2d 580, 584 (1984).

Implicit from the Second FOF and COL taken as a whole is the unavoidable conclusion that, since Hana Ranch did not have good title to the Nakuina interest through Kalawa's deed, then Kalawa was still the owner when he died.

(b)

Hana Ranch argues that because it did not sign the stipulation it is invalid and ineffective under Rule 19(a) of the Rules of the Circuit Court (1984), which reads in pertinent part as follows:

Forms of Stipulations and Orders. Unless made in open court, all stipulations shall be in writing, signed by the parties or their attorneys, and filed with the clerk.

However, we construe the rule to require signing by the parties to the stipulation. The rule does not require that the stipulation must be signed by all the parties to the proceeding in which the stipulation is entered.

Similarly, Hana Ranch's argument that the ruling in *Thomas v. State,* 57 Haw. 639, 562 P.2d 425 (1977), condemns the improper use of stipulations in multi-party quiet title actions does not assist Hana Ranch. Hana Ranch correctly points out that "one not a party to a stipulation may not be bound by it." *Id.* 57 Haw. at 643, 562 P.2d at 427. However, the distinction between *Thomas* and the instant case is that in *Thomas* the stipulation was between certain of the parties to the action and affected the property rights of parties to the action who were not parties to the stipulation. Here, however, the stipulation only affected a portion of the undivided interests that were not or could not be claimed by Hana Ranch. The stipulation did not affect the interests that Hana Ranch was asserting. The stipulation conceded to Hana Ranch everything it sought and it cannot complain about the court's approval and adoption of it.

Hana Ranch finally argues that the stipulation attempts to establish Defendants' title to the Nakuina interest without the prerequisite of any finding by the court that they were entitled to the interest. The argument is without merit.

As discussed above in part 2(a), the Second FOF and COL implicitly holds that Kalawa died seised of the Nakuina interest. That supports the

conclusion stated by the trial court that the interest descended to Defendants. At oral argument Hana Ranch's attorney conceded that there are no other claimants to the Kalawa share.[13] The trial court having found that Hana Ranch did not have title to the Nakuina interest and that the interest descended to Defendants, the stipulation among them amicably dividing that interest was perfectly proper.

## ENGLISH APPEAL

Appellant English appeals the trial court's September 26, 1983, holding that English's father, Kalawa Liilii, was the brother of Kalawa and not his son as asserted by English, and, therefore, English was not an heir of Kalawa.

There was direct evidence before the trial court that Kalawa Liilii was the brother of Kalawa. English produced no direct evidence to show that Kalawa Liilii was the son of Kalawa.

We have examined the record and find that the trial court's findings of fact are supported by substantial evidence and we are not convinced that a mistake has been made. *DeMund v. Lum*, 5 Haw. App. 336, 690 P.2d 1316 (1984). The findings in turn support the trial court's conclusions of law. *Nani Koolau Co. v. K & M Construction, Inc., supra.*

The Hana Ranch appeal is dismissed. The judgment is affirmed as to English.

*William F. Crockett (Crockett and Nakamura* of counsel) for Hana Ranch.

*Donald E. Scearce (Grace Nihei Kido* and *Sandra Y. Takahata* with him on the briefs; *Cades Schutte Fleming & Wright* of counsel) for Margaret K. I. B. Bartholomew.

*Gary R. Phillips (B. Martin Luna* with him on the briefs; *Carlsmith, Wichman, Case, Mukai and Ichiki* of counsel) for Leslie Medeiros.

*Timothy K. Chism, Jr. (Richard L. Rost* with him on the brief; *Richard L. Rost, A Law Corporation,* of counsel) for Hattie P. DeRego.

*Keoni K. Agard* for Murray English.

---

[13]Hana Ranch puts forth an abstruse argument that, in awarding the undivided interests to Defendants, the trial court was violating its duty to protect the interests of unknown owners. HRS § 668-9. However, in view of counsel's concession at oral argument that there are no other claimants to the Nakuina interest than the parties to the appeal and Cabral, the argument is without merit.